UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DELAIZARAH ZGRAGGEN ROSARIO,**

        **Plaintiff,**

**v.**        Case No:   6:15-cv-1125-Orl-41GJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Delaizarah Zgraggen Rosario (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income ("SSI").  Doc. No. 1.  Claimant argues the Administrative Law Judge (the "ALJ") erred by: 1) rejecting the opinion of her treating physician, Dr. Sofia Qadir; and 2) finding her testimony concerning her pain and limitations not credible.  Doc. No. 15 at 13-16, 20-22.  Claimant requests the matter be reversed and remanded for further proceedings.  *Id*. at 29.  For the reasons that follow, it is **RECOMMENDED** the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

**I.    PROCEDURAL HISTORY.**

On February 14, 2011, Plaintiff filed an application for SSI, alleging a disability onset date of July 27, 2008.  R. 41.[1]  On July 18, 2013, the ALJ held a hearing in this matter.  R. 647.  On November 29, 2013, the ALJ entered a decision finding Claimant not disabled.  R. 41-58.  On

---

[1] That same day, Plaintiff filed an application for disability insurance benefits ("DIB").  R. 157-58.  That application was denied pursuant to the doctrine of *res judicata*.  R. 13, 15, 41-42.  This appeal does not involve the denial of Claimant's application for DIB.  Doc. No. 15 at 1 n.1.

January 3, 2014, Claimant requested the Appeals Council review the ALJ's decision. R. 37. On December 18, 2014, the Appeals Council granted Claimant's request for review. R. 12. On May 13, 2015, the Appeals Council entered a decision essentially adopting all of the ALJ's findings, and finding Claimant not disabled. R. 12-15. Accordingly, the Appeals Council's decision is the Commissioner's final decision. Claimant's arguments, while correctly alleging error by the Appeals Council, focus on the ALJ's findings at step four of the sequential evaluation process, namely the ALJ's consideration of Dr. Qadir's opinion and Claimant's testimony. Doc. No. 15 at 13-29. Therefore, for purposes of this appeal and for ease of discussion, the undersigned will consider whether the ALJ erred with respect to Dr. Qadir's opinion and Claimant's credibility. If the ALJ did error, then that error will be attributable to the Appeals Council, which adopted the ALJ's findings at step four of the sequential evaluation process. R. 13.

**II.     STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the

decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III. ANALYSIS.

This appeal primarily centers on the ALJ's consideration of Dr. Qadir's opinion. Doc. No. 15 at 13-28. The ALJ considered Dr. Qadir's opinion, and provided several reasons suggesting that she rejected her opinion. R. 56. However, the ALJ did not assign any weight to Dr. Qadir's opinion. *Id*. Nevertheless, the parties agree the ALJ rejected Dr. Qadir's opinion. Doc. No. 15 at 13-20. Claimant argues the reasons given by the ALJ for rejecting Dr. Qadir's opinion are not supported by substantial evidence and good cause. *Id*. at 15-16. In response, the Commissioner argues the opposite. *Id*. at 17-20.

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238; *see also* 20 C.F.R. § 416.920(a)(4)(iv). "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 416.945(a). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources. 20 C.F.R. § 416.945(a)(1), (3).

Weighing the opinions and findings of treating, examining, and non-examining medical sources is an integral part of the ALJ's RFC determination at step four of the sequential evaluation

process. *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also* 20 C.F.R. § 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

Claimant has a history of mental impairments. *See, e.g.*, R. 324-326, 334-61. On July 23, 2012, Claimant began treating with Dr. Qadir, a psychiatrist, complaining of "bipolar PTSD [and] panic attacks." R. 543. Claimant reported taking several medications as a result of her mental impairments. *Id*. A mental status examination performed that day revealed Claimant's mood was anxious, she was paranoid, and she had auditory and visual hallucinations. R. 544. The examination also revealed Claimant was alert, had a normal appearance, speech and motor skills, cooperative behavior, intact insight and judgment, coherent thoughts, and no suicidal or homicidal thoughts. R. 543-44. Dr. Qadir diagnosed Claimant with "[m]ood disorder bipolar type with psychosis [and] PTSD anxiety." *Id*. Dr. Qadir advised Claimant to continue taking the medications prescribed to control her mental impairments. *Id*.

On August 23, 2012, Claimant reported, among other things, mood swings. R. 545. A mental status examination performed that day revealed Claimant's affect was labile, tearful and depressed, and her mood was anxious. *Id*. The examination also revealed Claimant had good insight, coherent thoughts, no paranoia, and no suicidal or homicidal thoughts. *Id*. Dr. Qadir diagnosed Claimant with "[b]ipolar [disorder] PTSD," and continued to treat her with medication. *Id*.

On November 26, 2012, Claimant reported "[t]hings are better now," indicating she has had no crying spells and her depression and mood swings were better. R. 546. A mental status examination performed that day revealed Claimant's mood was anxious. *Id*. The examination also revealed Claimant had good insight, coherent thoughts, no paranoia, no suicidal or homicidal thoughts, and no auditory or visual hallucinations. *Id*. Dr. Qadir diagnosed Claimant with bipolar disorder, unspecified, and continued to treat her with medication. *Id*.

On December 27, 2012, Claimant reported issues with her sleep and memory, hearing voices mumbling to her, and feeling "somewhat more manic and hyper." R. 547.[2] A mental status examination performed that day revealed Claimant's mood was anxious. *Id*. The examination also revealed Claimant had good insight, coherent thoughts, no paranoia, no suicidal or homicidal thoughts, and no auditory or visual hallucinations. *Id*. Dr. Qadir diagnosed Claimant with bipolar disorder, unspecified, and continued to treat her with medication. *Id*.

On February 22, 2013, Dr. Qadir completed a psychiatric medical assessment. R. 548-49. Dr. Qadir opined Claimant has marked difficulties in maintaining social functioning and maintaining concentration, persistence or pace. R. 548. Dr. Qadir opined Claimant is mildly to moderately limited in her ability to perform activities within a schedule, maintain regular

---

[2] The record contains no treatment records from Dr. Qadir dated after December 27, 2012.

attendance, and be punctual within customary tolerances.  R. 549.  Dr. Qadir also opined Claimant has the following marked limitations: completing a normal workday and workweek without interruptions; working in coordination with or proximity to others without being distracted by them; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 549.

At step two of the sequential evaluation process, the Appeals Council adopted the ALJ's step two findings, thus finding Claimant suffered from several severe physical impairments, and the following severe mental impairments: bipolar disorder with psychosis; and anxiety disorder. R. 12, 44.  At step four of the sequential evaluation process, the Appeals Council found Claimant has a RFC to perform sedentary work as defined by 20 C.F.R. § 416.967(a), explaining:

> [Claimant has] the residual functional capacity to lift 10 pounds occasionally, stand or walk for two hours in an eight-hour workday as well as sit for six hours in an eight-hour workday.  She [i]s precluded from climbing ladders, ropes and scaffolds and restricted to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling.  The claimant [i]s unable to have concentrated exposure to vibration and work hazards.  She [i]s restricted to frequent reaching, handling and feeling.  Additionally, the claimant [i]s limited to understanding, remembering and carrying out simple job instructions.  Finally, she [i]s restricted to occasional interaction with supervisors, co-workers and the general public with occasional work changes.

R. 13.[3]  In reaching this RFC, the Appeals Council adopted the ALJ's step four findings.  *Id*.  At step four of the sequential evaluation process, the ALJ thoroughly summarized and discussed Claimant's testimony, the medical evidence of record, including Dr. Qadir's treatment records,

---

[3] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

and the opinion evidence of record, including Dr. Qadir's opinion. R. 46-56. In discussing the opinion evidence of record, the ALJ considered, but did not weigh, Dr. Qadir's opinion, explaining:

> Sofia Qadir, M.D. gave the claimant disabling limits in the psychiatric medical assessment on February 22, 2013. However, treatment notes from July 2012 to December 2012 shows the claimant said, "things are better now" in November 2012. The [ALJ] finds the medical assessment is not consistent with the claimant's sporadic mental health treatment, lack of crisis center visits or inpatient psychiatric hospitalizations. If found credible, Dr. Qadir's limitations would likely indicate the need for psychiatric institutionalization.

R. 56. Accordingly, the ALJ seemingly rejected Dr. Qadir's opinion because: 1) Claimant once reported "things are better now"; 2) Claimant would likely need to be institutionalized in light of Dr. Qadir's opinion, but has never been institutionalized; and 3) Claimant received sporadic mental health treatment and was never hospitalized as a result of her mental impairments. *Id*.

Claimant argues the ALJ did not articulate good cause for rejecting Dr. Qadir's opnion. Doc. No. 15 at 15-16. However, the undersigned notes the ALJ did not state what weight, if any, was assigned to Dr. Qadir's opinion. *See* R. 56. Claimant does not argue the ALJ erred in this respect, and the parties agree the ALJ rejected Dr. Qadir's opinion. Doc. No. 15 at 13-20. However, the parties' understanding does not render the issue moot. Clearly, the ALJ had no intention of assigning Dr. Qadir's opinion substantial weight, but it is unclear to what extent the ALJ rejected Dr. Qadir's opinion. Whatever the case may be, the undersigned finds the ALJ erred by not stating with particularity what weight was assigned to Dr. Qadir's opinion. *Winschel*, 631 F.3d at 1179. In light of the Appeals Council's adoption of the ALJ's step four findings, the Appeals Council made the same error. This error frustrates the Court's ability to conduct a meaningful review of the ALJ's decision, particularly as it pertains to Dr. Qadir's opinion and the

reasons the ALJ articulated for assigning it something less than substantial weight. *Id*. Therefore, the undersigned finds this error requires reversal. On remand, the ALJ should articulate with specificity the weight assigned to Dr. Qadir's opinion.[4] Accordingly, it is **RECOMMENDED** that the case be reversed and remanded for further proceedings.[5]

## IV. CONCLUSION.

For the reasons stated above, it is **RECOMMENDED** the Court:

1. **REVERSE** and **REMAND** the final decision of the Commissioner for further proceedings pursuant to sentence four of Section 405(g); and

2. Direct the Clerk to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

---

[4] The undersigned notes that the ALJ characterizes Dr. Qadir's November 26, 2012 treatment note inconsistently. Initially, the ALJ accurately characterizes the note as stating things "were better with her boyfriend." R. 52. Later, when attempting to evaluate Dr. Qadir's opinion, the ALJ characterizes the note as suggesting all "things are better now" for Claimant. R. 56. On remand, the ALJ will have to specify the weight given to Dr. Qadir's opinion and state the reasons therefor anew.

[5] Claimant's second assignment of error challenges the ALJ's credibility finding, and largely hinges upon the outcome of her first assignment of error. Doc. No. 15 at 20-22. Accordingly, in light of the disposition of Claimant's first assignment of error, there is no need to separately address Claimant's second assignment of error.

Recommended in Orlando, Florida on May 26, 2016.

*Gregory Kelly*
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy